## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT BATTLE | * | |
| Plaintiff | * | |
| v. | * | Civil Action No.ELH-12-1522 |
| LT. BEULAH BURESS,[1] *et al.* | * | |
| Defendants | * | |
| | *** | |

### MEMORANDUM

Plaintiff Robert Battle filed suit under 42 U.S.C. § 1983, alleging that he was sexually assaulted by another inmate on April 16, 2012, when he was confined at the Southern Maryland Pre-Release Unit ("SMPRU"), a Maryland Correctional institution.  ECF 1.  Shortly thereafter, he filed an Amended Complaint, ECF 3, and then a Corrected Complaint.  *See* ECF 8.

Defendants moved to dismiss or, alternatively, for summary judgment ("Motion").  ECF 14.  The Motion is supported by almost thirty pages of records pertaining to an investigation as to plaintiff's allegations of sexual assault, conducted by the Internal Investigation Unit ("IIU") of the Maryland Department of Public Safety and Correctional Services; 288 pages of plaintiff's medical records; two declarations; and another document.  Notice was sent to plaintiff at the address he provided the court regarding the effect of the motion, his right to file a response in opposition, and the consequences of failing to do so.  ECF 15.  The notice was returned to the court marked "not at this institution."  *See* ECF 16.  A search of the Department of Public Safety

---

[1] The Warden's name is incorrectly spelled as "Burress."  The Clerk shall correct the docket to reflect the proper spelling of defendant Buress's name.

website indicates that plaintiff is no longer in Maryland's prison system. The Motion shall be considered as unopposed.[2]

### Factual Background

Plaintiff states that he is homosexual and that prison staff were aware of his sexuality. He claims he was in the bath/washroom on April 16, 2012, when he was raped by an inmate he did not know and could not identify. Battle states that, after the assault, he verbally reported the incident to Lt. Beulah Buress at approximately 6:00 a.m. and expressed his fear about remaining in a correctional facility with dormitory style housing. Battle claims Buress was "blunt" and "dismissive" in her response to him and denied his request for medical treatment. Further, he asserts that Buress told him he would be transferred the next day. *Id.* In his amended complaint, Battle claims Buress also told him the inmate he had described to her as his assailant had already been transferred to another prison "at 1700 hours" on April 16, 2012. ECF 3 at 3.

At approximately 7:00 a.m. on April 17, 2012, Battle was transferred to the Jessup Pre-Release Unit ("JPRU"). ECF 3 at 3. Battle states he reported the sexual assault to Captain Lane, requested protective custody, and explained his fear about being housed in a prison dormitory. *Id.* at 4; ECF 1 at 1. In his conversation with Captain Lane, Battle states he was told he was being processed into JPRU and asked if he was refusing housing. ECF 1 at 1. Captain Lane denied Battle's request for protective custody, and told Battle he would be receiving a disciplinary infraction for refusing housing. *Id.* Battle states he was then told by transportation officer Brown that he would be going to Central Maryland Correctional Facility ("CMCF"). *Id.* at 2. He claims that while he was being transported there, they stopped at Brockbridge Correctional Facility, where another inmate was picked up. Battle asked the other inmate if

---

[2] Under Local Rule 102.1.b.iii (D. Md. 2011), all parties have an affirmative duty to inform this court of any change of address during the pendency of their actions. Failure to do so may result in dismissal of the complaint, without prejudice.

CMCF had dormitory housing or cells, and the other inmate replied that it only had dormitory housing.  Battle arrived at CMCF, where he was strip searched and his property was inventoried.  He claims he explained his "situation" to Officer Pollard, who was going through his property.  She told him she would contact her supervisor, but he would probably stay the night.  Battle responded that he was afraid something might happen to him again and that if he did not obtain medical help soon he would kill himself by taking the handful of pills he was holding in his hand.  *Id*.  Battle claims Pollard told him she did not care because it was not her life.  At that time Battle swallowed the handful of Dilantin pills he was holding and Pollard called for emergency assistance on her radio.  *Id*.

Battle was escorted to the medical department by Lt. Friday, where he spoke with Captain Green and again explained his "situation."  *Id*.  Green advised Battle that she would get him the help he needed and he was sent to the Jessup Regional Hospital and then transferred to Mercy Hospital.  *Id*.  Battle claims he was transported to Mercy Hospital by Officers Stokes and Miller, "for a rape kit."  ECF 3 at 4-5.  Upon his arrival he was evaluated by a nurse and met with a social worker.  ECF 3 at 4.  The alleged sexual assault was reported to the IIU by the nurse who examined Battle.  *Id*.  Battle states the nurse noted, in the presence of Miller, that he had "several rips" and swelling in his rectum, but declined to suture the tears because she felt they would heal on their own.  ECF 1 at 2-3.  Pictures were taken of the area and given to Miller for Battle's medical record.  Battle claims the copies provided to him were taken from him by Miller.  *Id*.  Battle was taken to Jessup Regional Hospital, where he was placed on suicide watch for one day.  *Id*. at 4.

Battle was interviewed by Detective Owens on April 28, 2012, and again on May 2, 2012.  *Id*.  Battle states he was shown a photo line-up and he identified his assailant.  He claims

Owens told him he was going to file charges and that Battle would be notified by the State when to appear for court.  *Id.*

In his suit, Battle asks the "named defendants to pay for all the stress, personal abuse and so forth."  ECF 3 at 3.

Additional facts will be included in the Discussion.

**Standard of Review**

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher*

4

*v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that  conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin*, 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  However, this discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

6

Plaintiff has not filed an opposition to the Motion or an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  In resolving the motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nevertheless, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Discussion**

To state a cause of action under 42 U.S.C. § 1983, the plaintiff must allege a violation of a federal constitutional right or a right secured by federal law.  In order to prevail on an Eighth Amendment claim of failure to protect from violence, plaintiff must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm.  *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987).

"Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.   Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994) (citations omitted).   Nevertheless, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id* at 837; s*ee also Rich v. Bruce*, 129 F. 3d 336, 339–40 (4th Cir. 1997).

Battle claims he named Warden Betty Johnson on the basis that she was the warden of SMPRU at the time of the assault.  ECF 8.  The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under §1983).   Therefore, the claims against Warden Johnson must be dismissed.

Battle also contends that his constitutional rights were violated because he told Lieutenant Buress of the sexual assault at SMPRU, and she failed to take him to the medical unit

or to protect him. ECF 14. An investigation was conducted by the IIU into Battle's allegation of sexual assault. The records reflect that the assault came to light on or about April 18, 2012, after Battle took an overdose of Dilantin pills. At that time, Battle advised medical staff of his sexual assault by another inmate on April 15, 2012,[3] at SMPRU. He was transported to Mercy Hospital, where a SAFE Kit was administered, and then to Jessup Regional Hospital for a mental evaluation. ECF 14-2, at 5.[4] On April 19, 2012, as part of that investigation, Lt. Buress was interviewed and she stated that "at no time did Inmate Battle notify her that he was sexually assaulted while housed at (SMPRU)." ECF 14, Ex. 1 at 6. In a separate declaration, under oath, Buress maintains that she was never informed by Battle of the sexual assault and adds that if he had so advised, she would have insured he received medical attention. *Id*. at Ex. 2. Additionally, in a Matter of Record submitted to the shift commander of SMPRU, Buress explains that she spoke with Battle at approximately 6:00 a.m. on April 16, 2012, as he was on his way to receive morning medication. *Id*. at 3. During that conversation, Buress told Battle he was dressed inappropriately with his Division of Correction issued shirt knotted at the waist and the waist band of his prison issued jeans rolled down on his waist. *Id*. In response, Battle asked her if she could have him transferred back to Hagerstown. *Id*. Later that morning, Battle spoke with Buress again and stated he wanted to stay at SMPRU. *Id*.

Other individuals interviewed as part of the IIU investigation included Officer Stephanie Bosley, who advised that Battle is gay and was known for having sex with other inmates in the dorm. ECF 14, Ex. 1 at 6. The inmate who shared a bunk with Battle was also interviewed and

---

[3] The report also reflects that Battle stated the assault occurred at "0200 hours" on April 16, 2012, not April 15, 2012. In any event, IIU records do not reflect that Battle informed Lt. Buress of the assault immediately after its occurrence.

[4] ECF 14-2 is Exhibit 1 to ECF 14. I may sometimes refer to this exhibit as ECF 14, Ex. 1.

stated that Battle never told him he had been assaulted.  *Id*.  Battle's cousin, Aaron Toye, also an inmate at SMPRU, was interviewed and stated that he spoke with Battle on a daily basis, that Battle never told him he had been sexually assaulted, and that he believed if Battle had been assaulted he would have told Toye about it.  *Id*. at 7.  Prior to transfer from SMPRU, Battle was seen by RN Richard Leonard, who was also interviewed by the IIU investigators.  Leonard stated that Battle never mentioned being sexually assaulted when he was seen in the medical unit.  *Id*.  Case Manager Christine Stonestreet told the IIU investigators that she had interviewed Battle prior to his transfer and he never mentioned being sexually assaulted.  *Id*.

Battle was also interviewed twice by the IIU investigators, once on April 18, 2012 and again on April 23, 2012.  ECF 14, Ex. 1 at 5-7.  During the first interview, Battle said that at approximately 2:00 a.m. on April 16, 2012, he was approached by an unidentified inmate in the bathroom who grabbed him by the shoulders, bent him over, pulled down his sweat pants, and penetrated his rectum with his penis.  *Id*. at 5.  Further, Battle stated that he did not scream or call for help and that his assailant did not threaten him in any way, nor did he possess a weapon.  *Id*. at 6.  Battle described his attacker as an African American male, twenty-seven years of age, six feet two inches tall, weighing 240 pounds, with a goatee and dreadlocks.  *Id*.

During the second interview, Battle advised that as he entered the bathroom his assailant was standing, holding his exposed penis.  *Id*. at 7.  Battle claimed his assailant stated, "let's not bull shit you know what I want."  Battle claimed he said no and attempted to leave, but his assailant grabbed him by the shoulders, bent him over, pulled down his sweat pants, and placed his penis into Battle's rectum.  *Id*.  He further related that when he heard someone else entering the bathroom, the assault stopped and his attacker left the bathroom.  *Id*. at 8.  Battle stated that he then returned to his bunk and went to sleep.  *Id*.

After Battle identified his assailant in a photographic array, his alleged assailant was interviewed. The inmate identified by Battle denied committing the assault,[5] claimed to be asleep in his bunk at the time of the attack, and stated he never left the dorm. He also alleged that it was against his Muslim faith to engage in homosexual activity, and claimed he did not know why Battle would make the allegation against him. ECF 14, Ex. 1 at 8. As a result of the inconsistencies in Battle's claim regarding to whom he reported the assault and the absence of any witnesses, no criminal charges were pursued against the inmate identified as Battle's assailant. *Id*.

Even if Battle's allegations are taken as true, there is no evidence that the alleged assailant presented a specific known risk of harm to Battle, or that Battle was a known target for sexual assault by other inmates. To the extent that there was a lapse in security that permitted the assault to occur, the claim is one of negligence, which is not encompassed by the Eighth Amendment's prohibition against deliberate or callous indifference to a specific known risk of harm. *See Pressly*, 816 F. 2d at 979. Additionally, the evidence provided by defendants establishes that a thorough investigation, including a medical examination, took place into Battle's allegations, which belies Battle's assertion that his claims were dismissed or ignored. Defendants are, therefore, entitled to summary judgment in their favor.

A separate Order follows.

Dated:  April 3, 2013                          _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge

---

[5] The name of the inmate identified by Battle was deleted from the report provided to the court. ECF 14, Ex. 1 at 8-9.